**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Jeffrey D. Klein (SBN 297296)
*jeff@tomorrowlaw.com*
Zachary T. Chrzan (SBN 329159)
*zach@tomorrowlaw.com*
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
Tel: (310) 438-5555 Fax: (310) 300-1705

Attorneys for Plaintiff, YESICA BECERRA ZAMORA, and
on behalf of herself and all others similarly situated and aggrieved

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YESICA BECERRA ZAMORA, an individual and on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>GRUMA CORPORATION., a Nevada stock corporation; ESTEPHANIE PERALES, an individual; and DOES 1 through 100, inclusive,<br><br>        Defendants. | CASE NO.: 3:23-cv-05256-LB<br><br>*[Magistrate Judge Laurel Beeler]*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION PURSUANT TO FRCP 12(b)(1) AND 12(b)(6) TO COMPEL ARBITRATION AND DISMISS ACTION**<br><br>[Declaration of Zachary T. Chrzan and Plaintiff's Evidentiary Objection filed concurrently herewith]<br><br>DATE:       November 30, 2023<br>TIME:       9:30 a.m.<br>COURTRM:   B – 15th Floor<br><br>State Action Filed:  August 2, 2023<br>Removal Date:    October 13, 2023 |

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
(310) 438-5555

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION PURSUANT TO FRCP 12(b)(1) AND 12(b)(6) TO COMPEL ARBITRATION AND DISMISS ACTION

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................... 1

II.     PROCEDURAL HISTORY ................................................................ 2

III.    LEGAL STANDARDS ...................................................................... 3

        A.      Motion to Compel Arbitration............................................ 3

        B.      Rule 12(b)(1) ...................................................................... 3

        C.      Rule 12(b)(6) ...................................................................... 4

IV.     ARGUMENT ..................................................................................... 4

        A.      The Court Should Decline to Rule on the Motion Unless and Until Defendants Establish Federal Subject-Matter Jurisdiction................... 4

        B.      Defendants Fail to Prove the Existence of a Binding Arbitration Agreement ........................................................ 5

        C.      The Purported Arbitration "Agreement" Attached to Defendants' Removal Papers Is Unconscionable and Thus Unenforceable ............. 8

                1.      The "Agreement" Attached to the Defendants' Removal Papers Is Procedurally Unconscionable...................................... 9

                2.      The "Agreement" Attached to Defendants' Removal Papers Is Substantively Unconsionable .............................................. 11

                        a.      The "Agreement's" waiver is illegal and has a disparate negative impact on Plaintiff and other employees .................... 11

                        b.      The unlimited scope of claims subject to arbitration is invalid and unconscionable ...................................................... 12

                        c.      The purported "Agreement" limits adequate discovery ............................................................................. 13

                3.      The "Agreement" Attached to the Defendants' Removal Papers Cannot Be Salvaged by Severing Any Particular Terms................. 14

        D.      There Is No Basis to Rule Plaintiff Lacks Standing to Pursue Non-Individual PAGA Claims ........................................ 15

V.      CONCLUSION ................................................................................ 18

# TABLE OF AUTHORITIES

## Statutes

Fed. R. Civ. P. 56(c)(4) ..................................................................................12

## Cases

*Ajamian v. CantorCO2e, L.P.*
      203 Cal.App.4th 771 (2012)........................................................10

*A & M Produce Co. v. FMC Corp.*
      135 Cal.App.3d 473 (1982)......................................................... 9

*Abramson v. Juniper Networks, Inc.*
      115 Cal.App.4th 638 (2004)........................................................10

*Armendariz v. Foundation Health Psychare Services, Inc.*
      24 Cal.4th 83 (2000) ..............................................9, 11, 13, 14

*Bakersfield Coll. v. Calif. Cmty. Coll. Athletic Ass'n*
      41 Cal.App.5th 753 (2019).........................................................10

*Camping Constr. Co. v. Dist. Council of Iron Workers, Local 378*
      915 F.2d 1333 (9th Cir. 1990)..................................................... 5

*Carbajal v. CWPSC*
      245 Cal. App. 4th 227, 245 (2016) ..............................................10

*Carlson v. Home Team Pest Defense, Inc.*
      239 Cal.App.4th 619 (2015).........................................................10

*Concat LP v. Unilever, PLC*
      350 F.Supp.2d 796 (N.D. Cal. 2004) ............................................ 5

*Davis v. Kozak*
      53 Cal.App.5th 897 (2020)....................................................11, 14

*Davis v. Nordstrom, Inc.*
      755 F.3d 1089, 1092-93 (9th Cir. 2014) ........................................ 3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION PURSUANT TO FRCP 12(b)(1) AND 12(b)(6) TO
COMPEL ARBITRATION AND DISMISS ACTION

*De Leon v. Pinnacle Prop. Mgmt. Servs., LLC*
    72 Cal.App.5th 476 (2021)............................................................10, 14, 15

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938 (1995)...................................................................... 8

*Fitz v. NCR Corp.*
    118 Cal.App.4th 702 (2004).........................................................10

*Fulton v. City of Phila., Penn.*
    (2021) 141 S.Ct. 1868.................................................................16

*Huff v. Securitas Sec. Servs. USA, Inc.*
    (2018) 23 Cal.App.5th 745..........................................................17

*Ingle v. Circuit City Stores, Inc.*
    328 F.3d 1165 (9th Cir. 2003)............................................8, 11, 15

*Iskanian v. CLS Transp. Los Angeles, LLC*
    (2014) 59 Cal.4th 348 ................................................................12

*Kelly v. Vons Cos., Inc.*
    (1998) 67 Cal.App.4th 1329........................................................16

*Kilgore v. KeyBank, Nat'l Ass'n*
    673 F.3d 947 (9th Cir. 2012)....................................................... 9

*Kim v. Reins Int'l Calif., Inc.*
    (2020) 9 Cal.5th 73 ...................................................................16

*Knutson v. Sirius XM Radio, Inc.*
    771 F.3d 559 (9th Cir. 2014)....................................................... 6

*Little v. Auto Stiegler, Inc.*
    29 Cal.4th 1064 (2003) ............................................................. 9

*Mercuro v. Sup. Ct.*
    96 Cal.App.4th 167 (2002).......................................................... 9

*Montana v. Wyoming*
    (2011) 563 U.S. 368...................................................................16

iv

*Moule v. United Parcel Serv. Co.*
    2016 WL 3648961 (E.D. Cal. Jul. 7, 2016) ....................................................10

*Nguyen v. Barnes & Noble Inc.*
    763 F.3d 1171 (9th Cir. 2014) .......................................................... 8

*Norcia v. Samsung Telecomms. Am., LLC*
    845 F.3d 1279 (9th Cir. 2017) .......................................................... 6

*Oswald v. Murray Plumbing and Heating Corp.*
    (2022) 82 Cal.App.5th 938 ............................................................12

*Serafin v. Balco Props. Ltd., LLC*
    235 Cal.App.4th 165 (2015) ........................................................... 9

*Sonic-Calabasas A, Inc. v. Moreno*
    57 Cal.4th 1109 (2013) .................................................................12

*USS-Posco Indus. v. Case*
    (2016) 244 Cal.App.4th 197 ..........................................................16

*Viking River Cruises, Inc. v. Moriana*
    142 S. Ct. 1906 (2022) ..............................................2, 12, 15, 16

*Zaborowski v. MHN Gov't Servs., Inc.*
    601 Fed. Appx. 461 (9th Cir. 2014) .............................................15

*Zullo v. Sup. Ct.*
    197 Cal.App.4th 477 (2011) .........................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this wage and hour class action, Plaintiff asserts an array of claims premised on Defendants' various alleged violations of the California Labor Code. Plaintiff seeks damages on behalf of a putative class of non-exempt employees of Defendants.

In an effort to avoid a ruling on the merits of these claims, Defendants filed the instant motion ("Motion") seeking (1) an order compelling arbitration of Plaintiff's claims, and (2) once compelled, an order dismissing the Action. Defendants claim their requested relief is warranted on the basis of a purported arbitration agreement.

At the outset, ruling on the Motion is improper because the Court's subject-matter jurisdiction to preside over this action remains unresolved. Plaintiff intends to move the Court for an order remanding this action to state court. Any ruling on the Motion should, therefore, be delayed until the Court reviews Plaintiff's forthcoming remand motion and conclusively determines it has subject-matter jurisdiction to preside over the Action.

But, if the Court decides to rule on the Motion at this time, it should deny the Motion in full for several reasons:

First, and most egregiously, Defendants have failed to provide the Court with the most critical piece of evidence on a motion to compel arbitration: **the purported arbitration agreement**. Therefore, there is simply no evidence before the Court, and the Court has no basis on which to grant Defendants' requested relief. In fact, doing so would deprive Plaintiff of her due process rights. Rather than attaching the agreement to its motion, Defendants simply refer to their own prior, unchallenged statement (ECF 1-2) to prove the existence of a valid and binding arbitration agreement. But this is textbook hearsay, with no applicable exceptions thereto, and the Court should not consider this document.

Second, even if the Court considers the purported "agreement" attached to Defendants' removal papers, the Court should find the "agreement" to be both

Law Offices of
BIBIYAN LAW GROUP
A Professional Corporation
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
(310) 438-5555

procedurally and substantively unconscionable and, therefore, unenforceable. A cursory review of the document attached to Defendants' removal papers reveals little more than a contract of adhesion, presented on a "take it or leave it" basis, which is riddled with multiple illegal terms that have a disparate negative impact on employees. Such draftsmanship on Defendants' part reflects an intent to wield arbitration as a weapon, not a tool. This cannot be allowed. In light of these appalling terms, and the manner in which they are presented to prospective signatories, rather than severing numerous unconscionable terms, the Court should find the entire "agreement" unenforceable.

Finally, Defendants premise a misplaced request for an order that Plaintiff lacks standing to seek representative PAGA on an explicit misreading and misapplication of the Supreme Court's recent ruling in *Viking River Cruises, Inc. v. Moriana* ["*Viking River*"], 142 S. Ct. 1906 (2022). But, as the Supreme Court made clear in *Viking River*, this question is wholly a state-law issue and state law is clear: an aggrieved employee does not lose standing to pursue PAGA claims on behalf of other aggrieved employees simply because her own PAGA claims are compelled to arbitration. This request should similarly be denied.

In short, the Court should not consider Defendants' motion at this time. But, if it does, the purported "agreement" cannot be enforced; Defendants failed to meet their burden of proving that a valid agreement ever existed between the Parties, and the document attached to Defendants' removal papers is unconscionable and, therefore, unenforceable. The Court should deny the Motion in full.

## II.   **PROCEDURAL HISTORY**

Plaintiff filed a civil complaint in the Superior Court of California for the County of Alameda, Case No.: 23CV039868 (the "Action"), asserting several causes of action against Defendants, premised on various violations of the California Labor Code, along with a claim under Business & Professions Code section 17200 ("UCL") for unfair competition. Thereafter, Defendants removed the Action to this Court (ECF

1) and filed the Motion (ECF 4, *et seq.*). Plaintiff hereby respectfully submits this opposition to the Motion.

### III.   <u>LEGAL STANDARDS</u>

#### A.   Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), a party seeking to enforce an arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. To determine whether to grant a motion to compel arbitration, courts consider two "gateway" questions: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (2015). Because arbitration is a creation of contract, a court may compel arbitration only when there is a "clear agreement" to arbitrate between the parties. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092-93 (9th Cir. 2014) (citations omitted). "When determining whether a valid contract to arbitrate exists, [courts] apply ordinary state law principles that govern contract formation." *Id.* at 1093 (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)).

#### B.   Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, meaning they only have jurisdiction as authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Thus, Rule 12(b)(1) allows a defendant to challenge a Court's subject matter jurisdiction to preside over a particular matter. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) motions are either facial or factual in nature; in resolving a "facial" attack, courts limit the inquiry to the complaint, accepting the plaintiff's allegations as true. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). On a "factual" attack, however, courts may review evidence attached to the motion. *Green v. United States*, 630 F.3d 1245, 1248 n.1 (9th Cir, 2011).

### C.   Rule 12(b)(6)

Under Rule 12(b)(6), courts must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is proper only if there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). There are two exceptions to this rule: First, a court may consider "material which is properly submitted as part of the complaint." *Id.* (citation omitted). If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir.1998). Second, under Fed. R. Evid. 201, a court may consider matters that are properly the subject of judicial notice. *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986).

## IV.   <u>ARGUMENT</u>

### A.   The Court Should Decline to Rule on the Motion Unless and Until Defendants Establish Federal Subject-Matter Jurisdiction

At the outset, ruling on the Motion is improper because the Court's subject-matter jurisdiction to preside over the Action remains unresolved. Indeed, "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *U.S. v. Cotton*, 535 U.S. 625, 630 (2002). Even in the absence of a challenge by a party, district courts have an independent duty to evaluate whether subject-matter jurisdiction exists. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). If a district court finds that no such jurisdiction exists, "the court is not in a position to act and its decisions cannot generally be enforced." *Toumajian v.*

1  *Frailey*, 135 F.3d 648, 652 (9th Cir. 1998). Thus, jurisdiction is a threshold issue

2  that *must* be resolved before the court can consider other issues. *See U.S. Catholic*

3  *Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 79-80 (1988).

4  Plaintiff will lodge a compelling challenge to the Court's subject-matter

5  jurisdiction in the form of a motion for remand. In fact, the Parties already met and

6  conferred in advance of Plaintiff's anticipated motion for remand on October 23,

7  2023, but were unable to narrow the issues. (*See* Declaration of Zachary Chrzan

8  ("Chrzan Decl.") ¶ 5, Exh. 1.) Any ruling on the Motion should, therefore, be delayed

9  until the Court reviews Plaintiff's forthcoming motion and determines it has subject-

10  matter jurisdiction to preside over the Action.

11  **B.**   **Defendants Fail to Prove the Existence of a Binding Arbitration**

12  **Agreement**

13  Even if the Court decides to rule on the Motion at this time (it should not),

14  Defendants' Motion suffers from an egregious oversight: they have not attached a

15  copy of the purported "agreement" that their entire motion is premised upon.

16  Therefore, Defendants fail to meet their burden of proving, by a preponderance of the

17  evidence, that there is a valid and binding agreement between the Parties. Defendants'

18  Motion is styled as (1) a motion to compel arbitration, (2) a Rule 12(b)(1) motion to

19  dismiss, and (3) a Rule 12(b)(6) motion to dismiss; Defendants' failure to attach the

20  purported "agreement" is fatal to all three motions.

21  First, when reviewing a motion to compel arbitration, a court "must determine

22  whether a contract *ever* existed; unless that issue is decided in favor of the party

23  seeking arbitration, there is no basis for submitting any question to the arbitrator."

24  *Camping Constr. Co. v. Dist. Council of Iron Workers, Local 378*, 915 F.2d 1333,

25  1340 (9th Cir. 1990). In resolving this issue, "a court applies a standard similar to the

26  [FRCP 56] summary judgment standard." *Concat LP v. Unilever, PLC*, 350

27  F.Supp.2d 796, 804 (N.D. Cal. 2004). It is the party seeking to compel arbitration that

28  bears "the burden of proving the existence of an agreement to arbitrate by a

preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). Critically, the moving party meets its burden "'by **attaching a copy of the arbitration agreement** purportedly bearing the opposing party's signature' to the motion to compel arbitration." *Zamudio v. Aerotek, Inc.*, 2023 WL 6796470 at *3 (E.D. Cal. Oct. 12, 2023) (citing *Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060 (2016) (emphasis added)).

Here, Defendants simply failed to the attach the purported arbitration "agreement" to the Motion. Therefore, the Court does not have the most critical piece of evidence it needs in reviewing a motion to compel arbitration: the purported arbitration agreement. The Court should deny Defendants' motion to compel arbitration on this ground alone.

Second, a Rule 12(b)(1) challenge may be either facial or factual in nature. In resolving a "facial" attack, the court limits its inquiry to the face of the complaint, accepting the plaintiff's allegations as true. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). On a "factual" attack, however, the court may review evidence **attached to the motion**. *Green v. United States*, 630 F.3d 1245, 1248 n.1 (9th Cir, 2011); *Safe Air*, 373 F.3d at 1039. Here, Defendants' Rule 12(b)(1) motion is a "factual" attack based on the existence of a purported arbitration agreement. But again, Defendants failed to attach the purported "agreement" to the Motion. Thus, Defendants have not provided the Court with the facts necessary to make a ruling, and the Court should deny their Rule 12(b)(1) motion on this ground alone.

Third, in considering Rule 12(b)(6) motions, "a district court may not consider any material beyond the pleadings." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). There are two exceptions to this rule: (a) a court may consider "material which is properly submitted as part of the complaint." *Id.* (citation omitted), and (b) under Fed. R. Evid. 201, a court may consider matters that are the proper the subjects of a request for judicial notice. *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282

6

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION PURSUANT TO FRCP 12(b)(1) AND 12(b)(6) TO
COMPEL ARBITRATION AND DISMISS ACTION

(9th Cir.1986). Here, Plaintiff has not alleged the existence of a valid and binding arbitration agreement, nor has she attached any agreement to her complaint. Moreover, Defendants have not requested that the Court take judicial notice of any purported arbitration agreement. Simply put, the purported arbitration agreement is not before the Court, and the Court should deny Defendants' Rule 12(b)(6) motion on this ground alone.

Defendants' failure to attach the purported arbitration agreement also denies Plaintiff of her right to challenge the validity of the agreement. Should the Court rule in Defendants' favor, without affording Plaintiff the ability to properly challenge the purported "agreement," Plaintiff will be deprived of her due process rights. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1224 (2018) ("The Fifth and Fourteenth Amendments guarantee that 'life, liberty, or property' may not be taken 'without due process of law.' That means the government generally may not deprive a person of those rights without affording [her] the benefit of (at least) those 'customary procedures to which freemen were entitled by the old law of England.'") (citations omitted).

Further, Defendants' reference to a prior docket entry does not cure its failure to attach the purported "agreement." (*See* ECF 1-2). As relevant here, hearsay is a statement "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). "Hearsay is not admissible unless a [federal statute, the FRE, or other rules of the Supreme Court] provide[] otherwise." Fed. R. Evid. 802. Defendants' attempt to cite ECF 1-2 to prove there is a valid and binding arbitration agreement is textbook hearsay. Defendants are, of course, permitted to reference prior docket entries to prove their existence. But Defendants cannot refer to ECF 1-2 to prove the truth of the matter asserted therein, namely, that there is a valid and binding arbitration agreement between the Parties, nor can Defendants reference the contents of the purported "agreement."

Additionally, ECF 1-2 does not fall under the public records exception to the general rule against hearsay. *See* Fed. R. Evid. 803(8). This exception would only arguably apply if Defendants referenced a prior docket entry in which the Court ruled that the purported agreement is valid and binding. But the Court has not previously made this finding, as that finding would only come after full review and ruling on this Motion. Referring to ECF 1-2 is simply referring to a prior, unchallenged statement by Defendant. This does not meet the definition of a public record under FRE 803(8).

Finally, Defendants' failure to attach the purported "agreement" cannot be cured by attaching new evidence to its forthcoming reply brief. It is well settled that "[n]ew evidence submitted as part of a reply is improper" because it does not allow the non-moving party an adequate opportunity to respond. *Morris v. Guetta*, 2013 WL 440127, *8 (C.D. Cal. Feb. 4, 2013); *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 682 (S.D. Cal. 1999) ("It is well accepted that [the] raising of new issues and submission of new facts in [a] reply brief is improper.") (internal quotation marks omitted). Therefore, Defendants cannot attach the purported arbitration agreement to its reply brief. But, even if Defendants do attach new evidence, the Court should not consider it, as Plaintiff has not had an adequate opportunity to respond.

### C. The Purported Arbitration "Agreement" Attached to Defendants' Removal Papers Is Unconscionable and Thus Unenforceable

Should the Court decide to rule on the Motion, and does not dispose of the Motion on evidentiary grounds, it should find that the purported agreement attached to Defendants' removal papers is manifestly unconscionable and, therefore, unenforceable in its entirety. "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Accordingly,

California federal courts assessing the enforceability of a purported arbitration agreement follow California state law principles. *Kaplan*, 514 U.S. at 944.

California law provides that an arbitration agreement must meet certain "minimum requirements" of fairness to be enforceable. *Armendariz v. Foundation Health Psychare Services, Inc.*, 24 Cal.4th 83, 113 (2000). A finding that these minimum standards of fairness have *not* been met—in other words, that the purported agreement is unconscionable—requires "both a *procedural* and a *substantive* element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, [and] the latter on 'overly harsh' or 'one-sided' results." *Id.* at 99 (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (1982)). These elements are viewed on a "sliding scale," meaning that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (quoting *Armendariz*, 24 Cal.4th at 114).

### 1.    The "Agreement" Attached to Defendants' Removal Papers Is Procedurally Unconscionable

The "procedural" prong under *Armendariz* concerns the manner in which the contract was negotiated and by which the consent of the parties was obtained: "[t]he procedural element of an unconscionable contract generally takes the form of a contract of adhesion, 'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003) (quoting *Armendariz*, *supra*, 24 Cal. 4th at 113). "To put it another way, procedural unconscionability focuses on the oppressiveness of the stronger party's conduct." *Mercuro v. Sup. Ct.*, 96 Cal.App.4th 167, 174 (2002). "Oppression[,]" in turn, "arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal.App.4th 165, 177 (2015).

First, to the extent that Plaintiff and Defendants executed any arbitration agreement at all, such an agreement is unquestionably a contract of adhesion. Certainly, Defendants' arguments strongly suggest that this "agreement" was "presented on a take it or leave it basis[,]" as a contract of adhesion. *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 663 (2004). Specifically, Defendants argue that Plaintiff's only options were (1) to sign the "agreement," or (2) to opt out and find other employment. (*See* Motion at 14:7-8 ("Plaintiff could have opted out and sought employment elsewhere."); *Id.* at 14:12-13 ("she could have found other employment.").)

"A nonnegotiable contract of adhesion in the employment context is procedurally unconscionable." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 794 (2012); *see also De Leon v. Pinnacle Prop. Mgmt. Servs., LLC*, 72 Cal. App. 5th 476, 485 (2021). This oppressive conduct alone is enough to render the purported "agreement" procedurally unconscionable. *See Bakersfield Coll. v. Calif. Cmty. Coll. Athletic Ass'n*, 41 Cal. App. 5th 753, 764 (2019); *Moule v. United Parcel Serv. Co.*, 2016 WL 3648961, at *6 (E.D. Cal. Jul. 7, 2016) ("oppression element [] satisfied" where terms of agreement "were offered on a 'take it or leave it' basis.")

Second, the "agreement" attached to Defendants' removal papers subject Plaintiff and other signatories to surprise. Surprise sufficient to sustain a showing of procedural unconscionability exists where "the employer not only fails to provide a copy of the governing rules, but also fails to clearly identify which rules will govern so the employee could locate and review them." *Carbajal v. CWPSC*, 245 Cal. App. 4th 227, 245 (2016); *see also Carlson v. Home Team Pest Defense, Inc.*, 239 Cal. App. 4th 619, 633 (2015). Courts routinely deem it unconscionable to reference rules of arbitration without attaching them, "requir[ing] the other party to go to another source in order to learn the full ramifications of the arbitration agreement." *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 721 (2004); *see also Zullo v. Sup. Ct.*, 197 Cal. App. 4th 477, 485-86 (2011).

The purported arbitration "agreement" bears no indication that any rules are attached thereto. While the "agreement" forces employees to attest they were provided with a "copy of the current JAMS rules," prior to signing, there is no evidence that this was actually done, as Mr. Gaitan does not attest that these rules were in fact provided to Plaintiff or other employees before they signed the purported "agreement." Moreover, there is ambiguity as to which rules actually control under the "agreement," as it states any arbitration shall be governed by "the current JAMS rules." (ECF 1-2, Exh. A, ¶ 5.) This language is unclear as to which set of rules will apply: Does this mean the rules that were in effect when Plaintiff purportedly signed the "agreement" will apply? Or do employees need to access the JAMS website to obtain a copy of the rules that are current whenever a dispute arises? This provision leaves employees in the dark and further reflects the procedural unconscionability of the purported "agreement."

### 2. The "Agreement" Attached to Defendants' Removal Papers Is Substantively Unconscionable

#### a. The "Agreement's" waiver is illegal and has a disparate negative impact on Plaintiff and other employees.

The "paramount concern" of the substantive unconscionability analysis under *Armendariz* is "mutuality." *Davis v. Kozak*, 53 Cal. App. 5th 897, 910 (2020). Although "lack of mutuality does not render the contract illusory, *i.e.*, lacking in mutual consideration[,] . . . in the context of an agreement imposed by the employer on the employee, such a one-sided term is ***unconscionable***." *Armendariz*, *supra*, 24 Cal.4th at 118 (emphasis added). This is because "it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee[.]" *Id.* at 117; *see also Ingle*, *supra*, 328 F.3d at 1174. Here, although the purported "agreement" feigns mutuality, the presence of a representative action waiver has a disparate, non-mutual impact on employees and their rights.

Moreover, the substance of the waiver violates state law prohibiting wholesale waivers of representative standing. Contrary to Defendants' assertion (Motion at 17-18), *Viking River* did not alter the fundamental rule under California law that "an employee's right to bring a PAGA action is unwaivable." *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 383 (2014); *see also Viking River*, 142 S. Ct. at 1924-25.) "As a result, employment agreements waiving an employee's right to assert a PAGA claim in a judicial forum are unenforceable." *Oswald v. Murray Plumbing and Heating Corp.* 82 Cal. App. 5th 938, 943 (2022). Such a brazenly unlawful putative waiver is unconscionable, as it is a contractual term that both "contravene[s] the public interest or public policy" and "attempt[s] to alter in an impermissible manner fundamental duties otherwise imposed by the law[.]" *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1145 (2013).

Thus, not only does Defendants' purported arbitration "agreement" have a disparate impact on employees, but it does so in a manner that is unlawful and beyond the pale of any legitimate bargain. The extent of non-mutuality in Defendants' purported arbitration agreement shocks the conscience, particularly in light of the power imbalance between employer and employee, and the Court could find it unenforceable on this basis alone.

> b.   *The unlimited scope of claims subject to arbitration is invalid and unconscionable.*

Despite the purported agreement's ostensible purpose as part of the employment contract between Plaintiff and Defendants, the arbitration clause extends far beyond disputes arising out of the employment relationship. Indeed, as Defendants highlight multiple times in the Motion, the "agreement" encompasses "**any** claim, dispute, or controversy between Employee and Company." (ECF 1-2, Exh. A, ¶ 1.) (emphasis added). In fact, the "agreement" would even require Plaintiff to submit to arbitration "claims for violation of any federal or state constitutional rights, governmental law, statute, regulation, order, ordinance, or provision." (*Id.*)

Courts reviewing similarly expansive arbitration clauses have frequently held that they are unconscionable. In one such case before the Seventh Circuit Court of Appeals, Judge Posner reasoned that "absurd results ensue" when a party attempts to enforce an arbitration clause that is unlimited on its face to claims unrelated to the underlying contractual relationship. *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003). For example, one merchant might seek to compel arbitration of a wrongful death suit brought on behalf of another merchant, who died as a result of a faulty product, on the basis of an unrelated supply contract between the two. Much like Judge Posner in *Steinkamp*, several district courts in California have held that, read in such a way, "such a clause would clearly be unconscionable." *In re Jiffy Lube Intern., Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012); *see also*, *e.g.*, *Esparza v. SmartPay Leasing, Inc.*, 2017 WL 4390182, at *3 (N.D. Cal. Oct. 3, 2017); *Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891, 903 (N.D. Cal. 2020).

Much like the arbitration agreements found to be overbroad in the preceding cases, the purported "agreement" here explicitly defines the scope of arbitrable claims without reference to the underlying employment relationship *at all* and is, therefore, unconscionable. A literal reading of the agreement would require Plaintiff to submit not only claims relating to her employment to arbitration, but *any* claim that she might *ever* possibly have against Defendants. Such a result is absurd and should not be permitted. Accordingly, the Court should find that this provision is substantively unconscionable.

   c. *The purported "Agreement" limits adequate discovery.*

California courts regularly find agreements that prevent employees from obtaining adequate discovery to be unconscionable. As the California Supreme Court has noted, adequate discovery in arbitration is particularly critical in the employment context, where, due to the informational imbalance between employer and employee, the failure to provide adequate discovery "leads to the de facto frustration of the employee's statutory rights." *Armendariz*, 24 Cal.4th at 104; *see also Baxter v.*

13

*Genworth N. Am. Corp.* 16 Cal. App. 5th 713, 727 (Cal. 2017) ("Seemingly neutral limitations on discovery in employment disputes may be nonmutual in effect.")

The purported "agreement" limits discovery to *initial disclosures* and *one deposition*. (*See* ECF 1-2, Ex. A, ¶ 5.; Motion at 15.) Aside from this, additional discovery may only be granted with permission of the arbitrator. This term is thus significantly more restrictive than the discovery limitation held to be unconscionable in *De Leon v. Pinnacle Property Management Services, LLC*, 72 Cal. App. 5th 476, 485 (Cal. 2021), which "limit[ed] each party to 20 interrogatories and three depositions per side." *Id.* at 487. The *De Leon* Court held that this limitation was substantively unconscionable because plaintiff "would be unable to vindicate his statutory rights under the limitations of the [agreement]." *Id.* at 489; *see also*, *e.g.*, *Davis v. Kozak*, 53 Cal. App. 5th 897, 911 (Cal. 2020) (holding that an arbitration agreement that limited the number of depositions to two demonstrated a high level of substantive unconscionability).

*De Leon* is on point. This is a complex wage-and-hour case in which Plaintiff seeks to recover against an entity and individual that employed her nearly a decade. Plaintiff cannot vindicate her statutory rights with one deposition covering the alleged wage-and-hour violations themselves, let alone all of Defendants' applicable policies and procedures at all relevant times, particularly since Plaintiff alleges that Defendants violated over ten (10) California Labor Code Sections. Thus, the term limiting discovery in the purported Agreement is substantively unconscionable.

### 3. The "Agreement" Attached to Defendants' Removal Papers Cannot Be Salvaged by Severing Any Particular Terms

California law provides that where a purported arbitration agreement "is rife with unconscionability, as here, the overriding policy requires that the arbitration be rejected[.]" *Armendariz*, *supra*, 24 Cal.4th at 127. "Multiple defects in an arbitration agreement" support a court's decision to forego severance of the agreement's unconscionable terms and to decline enforcement in full, as such an agreement

14

suggests "a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's forum." *Id.* In short, severance is inappropriate where "the taint of illegality cannot be removed." *De Leon*, *supra*, 72 Cal.App.5th at 413. Here, severing the offending provisions "would require [the Court] to 'assume the role of contract author rather than interpreter." *Zaborowski v. MHN Gov't Servs., Inc.*, 601 Fed. Appx. 461, 464 (9th Cir. 2014) (quoting *Ingle*, *supra*, 328 F.3d at 1180). This the Court simply cannot do. Thus, the Court should find the entire Agreement unenforceable.

### D. There Is No Basis to Rule Plaintiff Lacks Standing to Pursue Non-Individual PAGA Claims

Defendants also seek an order denying Plaintiff leave to amend to add representative PAGA claims. (Motion at 17-18.) Assuming that the purported "agreement" is valid and enforceable, Defendants argue that once Plaintiff's individual claims are sent to arbitration, she will lack standing to pursue representative PAGA claims. Defendants are wrong.

First, for all the reasons stated herein, the purported "agreement" is not before the Court, and the document attached to Defendants' removal papers is unenforceable. Therefore, none of Plaintiff's claims are subject to arbitration, and she should freely be allowed to pursue PAGA claims.

Second, to the extent the Court is inclined to compel arbitration of Plaintiff's individual claims, however, there is no basis on which to rule that Plaintiff lacks standing to pursue representative PAGA claims. This question is wholly a state-law issue. As Justice Alito noted in *Viking River*, there is no federal law "establish[ing] a categorical rule mandating enforcement of waivers of standing to assert claims on behalf of absent principals." *Viking River*, 142 S.Ct. at 1922. To the contrary, while the FAA may require enforcement of a pre-dispute agreement to arbitrate *individual* claims for civil penalties under PAGA, *non-individual* claims "may not be dismissed simply because they are 'representative.'" *Id.* at 1925. Thus, Justice Alito reasoned

15

that the representative PAGA claims asserted should be dismissed *not* on grounds of federal law, but because he saw substantive California law as compelling that result. *Id.* at 1924-25. Justice Sotomayor, in a concurrence furnishing a critical fifth vote in support of Justice Alito's opinion, underlined this limitation in the Supreme Court's ruling, noting that, "if [the] Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word." *Id.* at 1925, Sotomayor, J., concurring.

Thus, California law controls, as *Viking River* did not and could not alter the principles of underlying, substantive state law on the question of standing under PAGA. Indeed, as the High Court itself has repeatedly recognized, the highest court of a state is the final arbiter of what is state law. *See Fulton v. City of Phila., Penn.*, 141 S. Ct. 1868, 1887 fn.21 (2021); *see also, e.g.*, *Montana v. Wyoming*, 563 U.S. 368, 377 fn.5 (2011). In other words, "it is for California courts, alone, to interpret California statutes[.]" *USS-Posco Indus. v. Case*, 244 Cal. App. 4th 197, 219 (2016); *see also Kelly v. Vons Cos., Inc.*, 67 Cal. App. 4th 1329, 1337 (1998) (holding that federal decisions that "construe federal law and procedure . . . are not binding in our interpretation of state law.") Therefore, Defendant's reliance on *Viking River* on this particular issue is misplaced.

Even before *Viking River* was decided, California courts had already provided more than sufficient guidance on this issue. Indeed, the California Supreme Court has explicitly held that "the Legislature did not intend to link PAGA standing to the maintenance of individual claims when such claims have been alleged." *Kim v. Reins Int'l Calif., Inc.* 9 Cal. 5th 73, 85 (2020). As the *Kim* court pointed out, the statute simply states that a representative PAGA plaintiff must be an "aggrieved employee," which in turn may be "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." *Id.* at 82 (quoting Lab. Code § 2699(c).) Whether Plaintiff can actually "obtain individual relief" is irrelevant, because standing is defined "in terms of violations, not

16

injury." *Id*. at 84-85. Thus, "it would be arbitrary to limit the plaintiff's pursuit of penalties to only those Labor Code violations that affected him or her personally." *Huff v. Securitas Sec. Servs. USA, Inc.*, 23 Cal. App. 5th 745, 757 (2018).

Since *Viking River*, multiple California courts have ruled that an aggrieved employee does not lose standing to pursue PAGA claims on behalf of other aggrieved employees simply because her own PAGA claims are compelled to arbitration. In *Galarsa*, the Court put it succinctly: "a plaintiff's PAGA standing does not evaporate when an employer chooses to enforce an arbitration agreement." *Galarsa v. Dolgen Calif., LLC*, 88 Cal. App. 5th 639, 653 (2023). This result flows from the face of the law: even if "plaintiffs' individual claims are compelled to arbitration, they nevertheless were employed by the alleged violator and claim that one or more of the alleged violations were committed against them." *Piplack v. In-N-Out Burgers*, 88 Cal. App. 5th 1281, 1291-92 (2023). Indeed, "unless and until there is a finding on the merits regarding the alleged violation, allegations of a Labor Code violation by an alleged employee or former employee are alone sufficient to establish PAGA standing." *Rocha v. U-Haul Co. of Calif.*, 88 Cal. App. 5th 65, 77 (2023). This reading is "consistent with, rather than contrary to, PAGA's remedial purpose, which PAGA achieves by deputizing employees to pursue civil penalties on the state's behalf." *Galarsa*, 88 Cal. App. 5th at 653. Thus, California law prohibits a ruling that Plaintiff lacks standing to assert representative PAGA claims.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

17

1  **V.**    **CONCLUSION**

2      For all of the foregoing reasons, Plaintiff respectfully requests that the Court

3  deny Defendants' Motion in its entirety. In the alternative, should the Court be

4  inclined to compel arbitration of some or all of Plaintiff's individual claims, Plaintiff

5  requests that the Court permit Plaintiff to proceed with litigation of her representative

6  PAGA claims.

7

8  Dated:  October 30, 2023            BIBIYAN LAW GROUP, P.C.

9

10                                     BY: _____

11                                          DAVID D. BIBIYAN
                                            JEFFREY D. KLEIN
12                                          ZACHARY T. CHRZAN
13                                          Attorneys for Plaintiff YESICA
                                            BECERRA ZAMORA, and on behalf
14                                          of herself and all others similarly
                                            situated and aggrieved
15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION PURSUANT TO FRCP 12(b)(1) AND 12(b)(6) TO
COMPEL ARBITRATION AND DISMISS ACTION