**BIBIYAN LAW GROUP, P.C.**
David D. Bibiyan (SBN 287811)
*david@tomorrowlaw.com*
Jeffrey Klein (SBN 294296)
*jeff@tommorrowlaw.com*
Zachary T. Chrzan (SBN 329159)
*zach@tomorrowlaw.com*
8484 Wilshire Boulevard, Suite 500
Beverly Hills, California 90211
Telephone: (310) 438-5555
Facsimile: (310) 300-1705

Attorneys for Plaintiff, YESICA BECERRA ZAMORA,
an individual and on behalf of all others similarly situated,

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YESICA BECERRA ZAMORA, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GRUMA CORPORATION, a Nevada stock corporation; ESTEPHANIE PERALES, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 3:23-cv-05256-LB<br><br>[Magistrate Judge Laurel Beeler]<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER REMANDING ACTION TO STATE COURT**<br><br>DATE:     December 21, 2023<br>TIME:     9:30 a.m.<br>COURT:   B, 15th Floor<br><br>State Action Filed: August 2, 2023<br>Removal Date:      October 13, 2023<br><br>*[Alameda County Superior Court, Case No. 23CV039868]*<br><br>Trial Date: Not Set |

I. **INTRODUCTION**

Defendants' copy-and-paste Opposition serves only as a concession that Defendants have not, and cannot, show that the amount-in-controversy is met. Specifically, Defendants fail to respond to, **and therefore concede**, the vast majority of the arguments set forth in Plaintiff's Motion. *See, e.g.*, *Rosenfeld v. United States DOJ*, 903 F.Supp.2d 859, 862 (N.D. Cal. 2012) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.")

First, and most tellingly, Defendants do not even attempt to address this Court's prior, on-point decision *Naranjo v. General Nutrition Corp.*, 2012 WL 2119260, at *4-5 (N.D. Cal. Jun. 11, 2012) (Beeler, J.) As Plaintiff argued in her Motion, *Naranjo* is on all fours, since Defendants too "rel[y] on numerous unsupported assumptions similar to those that the Ninth Circuit has repeatedly rejected." Because of these assumptions, and the lack of evidence before the Court, Defendants "failed to demonstrate that the amount in controversy is greater than $5 million . . ." *Id.* at *5.

Second, Defendants failed to respond to the following specific factual arguments Plaintiff makes regarding the faulty assumptions underlying each of their removal calculations: (1) Defendants assume that every single putative class member (6,190 individuals) is aggrieved; (2) Defendants rely on **hundreds of thousands of non-existent violations** as the bedrock of every one of their calculations, as Defendants improperly assumed that, e.g., employees who were terminated in 2019 were still experiencing weekly Labor Code violations in 2023; (3) Defendants apply the wrong statutory time period and calculate four years of violations, improperly increasing their already inflated calculations by at least 25% each; (4) Defendants assume an unreasonable $2,000 paystub penalty for every single employee; and (5) Defendants calculate 6% of an already severely inflated number to determine the attorneys' fees at issue.

By conceding that *Naranjo* is directly on point, and that the unreasonable assumptions detailed in Plaintiff's Motion, and once again herein, led to severely inflated removal calculations, Defendants admit that they have failed to prove, by a preponderance of the evidence, that CAFA's amount in controversy requirement is met.

Faced with the reality that their calculations are based on nothing more than unsupported conjecture and faulty assumptions, Defendants attempt to mislead the Court and manufacture allegations that *do not exist*. But, because the information necessary to support removal is within the control of Defendants as the employers of Plaintiff and other putative class members, there is no excuse for Defendants' reliance upon unsupported conjecture to support removal. As Defendants have the burden of proof by a preponderance of summary-judgment-type evidence, and Defendants have proffered no evidence supporting violation rates, Defendants have unquestionably failed to meet their burden. The violation rates Defendants tied to their calculations are speculative, and the court should not replace Defendants' unreasonable assumptions with its own reasonable assumptions. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015) ("The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own.")

Finally, in arguing that Plaintiff's UCL claim should be dismissed, Defendants concede the Court lacks equitable jurisdiction. This is an independent bar to federal jurisdiction separate from Defendants' failure to establish CAFA jurisdiction.

The Court should grant Plaintiff's Motion and remand this Action back to the Superior Court of California, county of Contra Costa.

**II.     ARGUMENT**

    **A.     Defendants Failed to Oppose, and Therefore Concede, the Vast Majority of the Arguments Set Forth in Plaintiff's Motion**

It is black letter law that, by failing to respond to arguments raised in a motion, a party concedes those arguments. *See, e.g.*, *Rosenfeld v. United States DOJ*, 903 F.Supp.2d 859, 862 (N.D. Cal. 2012) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."); *Azpeitia v. Tesoro Ref. & Mktg. Co. LLC*, No. 17-cv-00123-JST, 2017 U.S. Dist. LEXIS 114210, at *27 (N.D. Cal. July 21, 2017); *Lansdown v. Bayview Loan Servicing, LLC*, No. 22-cv-00763-TSH, 2023 U.S. Dist. LEXIS 64302, at *23 (N.D. Cal. Apr. 12, 2023).

Here, Defendants failed to respond to, **and therefore concede**, the following arguments Plaintiff made in her Motion: (1) this Court's prior decision in *Naranjo v. General Nutrition Corp.*, 2012 WL 2119260, at *4-5 (N.D. Cal. Jun. 11, 2012) (Beeler, J.) is directly on point and counsels in favor of granting Plaintiff's motion; (2) Defendants improperly assume that every single putative class member (6,190 individuals) is aggrieved; (3) Defendants rely on **hundreds of thousands of non-existent violations** as the bedrock of every one of their calculations, as Defendants improperly assumed that, e.g., employees who were terminated in 2019 were still experiencing weekly Labor Code violations in 2023; (4) Defendants apply the wrong statutory time period and calculate four years of violations, rather than three, improperly increasing their already inflated calculations by at least 25% each; (5) Defendants assume an unreasonable $2,000 paystub penalty for every single employee; and (6) Defendants calculate 6% of an already severely inflated number to determine the attorneys' fees at issue. (*See generally* ECF 19.)

The Court should grant Plaintiff's Motion on this basis alone.

**B.   Defendants Alone Carries the Evidentiary Burden on Removal, and they Failed to Meet Their Burden in Light of Plaintiff's Limiting Allegations**

A common theme throughout Defendants' Opposition is that Plaintiff, a non-exempt, minimum wage employee with no access to any of Defendants' records, failed to provide the Court the evidence it needs to decide whether removal was proper. In doing so, Defendants repeatedly attempt to mislead the Court by citing cases that discuss the inapplicable standard for considering a notice of removal **prior to a motion to remand**, e.g., Defendants cite portions of *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014), *Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019), and *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193 (9th Cir. 2015). Defendants' Opposition is misleading and utilizes a standard that does not apply here.

Moreover, Defendants' reliance on *Dart* is further misplaced, as *Dart* does not absolve Defendants of their evidentiary burden. *Dart* merely stands for the proposition that a notice of removal need not be accompanied by evidentiary submissions. *Dart*, 135 S. Ct. at 554. The Supreme Court made it clear that a "defendant seeking removal under CAFA . . . **must prove that amount**, if the plaintiff challenges the allegation." *Id*. at 553-54 (emphasis added). Thus, Defendants were

required to produce "summary-judgment type evidence" of the amount in controversy if, as here, it is indeterminate from the face of the complaint that the jurisdictional threshold is met. *Rodriguez v. US Bank Nat'l Ass'n*, 2016 WL 5419403, at *4 (C.D. Cal. Sept. 26, 2016). Defendants "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015).

Simply put, Defendants may not "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction." *Roth Comerica Bank*, 799 F. Supp. 2d 1107, 1129 (C.D. Cal. Aug. 31, 2010). But that is precisely what Defendants attempt to do here by asserting that class claims give removing defendants license to allege, made-up, aggressive violation rates without providing any evidence. (Opposition 10:3-5). Not surprisingly, numerous other courts have also rejected Defendants' approach. *See, e.g.*, *Gonzalez v. H&M*, 2022 WL 179292, at *3-4 (C.D. Cal. Jan. 20, 2022); *Duran v. Allegis Global Solutions, Inc.*, 2021 WL 3281073, at *3 (N.D. Cal. Aug. 2, 2021); *Moore v. Dnata US Inflight Catering LLC*, 2021 WL 3033577, at *2 (N.D. Cal. July 19, 2021).

Plaintiff's limiting allegations render Defendants' speculative, assumed violation rates insufficient to meet their burden. Before Defendants can establish jurisdiction by use of a 'chain of reasoning that includes assumptions[,]" it must also show that these assumptions have "some reasonable ground underlying them." *Id*. at 1199. As the court held in *Chin v. Cole Haan, LLC*, 2016 WL 7211841 (N.D. Cal., Dec. 13, 2016), "the removing party, bears the burden of proof, as well as the burden of 'persuad[ing] the court that the estimate of damages in controversy is a reasonable one.'" *Id.*, at *1-2 (holding the defendant "failed to meet its burden" because it "pulls various assumptions 'from thin air' without explaining any factual bases for the reasonableness of those assumptions."); *see also Moore*, 2021 WL 3033577 at *3 ("[Defendant] rather randomly assumed a 20% meal and rest break violation rate, an assumption that is not tied to any evidence or the complaint, and **appears to have been pulled out of thin air**.") (emphasis added).

Defendants cannot meet their burden with such unreasonable assumptions and conjecture. Defendants have exclusive access to putative class members' time and wage records and could have at least analyzed a sample of records. *See Moreno v. Ignite Rest. Group*, 2014 WL 1154063 (N.D.

4

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ORDER REMANDING ACTION TO STATE COURT

Cal. 2014) at *5 (holding that because defendants did not provide support for their speculative violation rates, "such as evidence based on their records or a random sampling," Defendant's showing was "not sufficient to establish the amount in controversy by a preponderance of the evidence.") By failing to provide evidence that any underlying violations ever occurred—never mind that they occurred for every employee—Defendants failed to meet their burden of proof.

In sum, instead of presenting summary-judgment evidence, Defendants incorrectly rely on speculative and incorrect assumptions in determining their amount in controversy calculations. Courts, including this Court (in a case that Defendants did not bother to address), repeatedly hold that, in light of allegations that violations occurred "at times and on occasion," and without any evidence, Defendants fail to establish the amount in controversy. *See Naranjo v. General Nutrition Corp.*, 2012 WL 2119260 at *4 ("Altogether, the court finds that GNC has failed to establish to a legal certainty, or even a preponderance of the evidence, the amount in controversy for the unpaid overtime claim."); *see also Gonzalez*, *Duran v. Allegis Global Solutions, Inc.*, No. 20-CV-09025-JD, 2021 WL 3281073, *3 (N.D. Cal. Aug. 2, 2021) (rejecting an assumed 100% violation rate in light of limiting allegations "at times.") The Court should reject Defendants' attempt to shift their evidentiary burden onto Plaintiff.

### C. The Declaration of Horacio Gaitan, Defendants' Sole Source of "Evidence," Fails to Provide the Court with Any Actual Data

In their opposition, Defendants failed to provide any additional facts supporting their calculations. The sole suggestion of "evidence" is the Declaration of Horacio Gaitan ("Gaitan") (hereinafter "Gaitan Decl.") filed concurrently with the removal papers, which provides various estimates of wage and time data. Gaitan's sole foundation for these estimates is that he "reviewed 'Gruma's Business Records'." (Gaitan Decl. ¶ 5). But Defendants provided zero records of any kind, leaving the number underpinning Defendants' estimates as unsupported speculation.

In addition to basing their calculations on baseless, speculative employment numbers, Gaitan fails to explain how he even calculated that there are 6,190 employees who worked a combined 2,071,966 *shifts*. Even though Defendants have the data to make accurate calculations, it chose not to. This amounts to a tacit admission that Defendants have no evidence supporting their speculative

violation rates. Defendants seemingly ignore that the assumptions underpinning their violation rates "cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, supra, 775 F.3d at 1199.

The Ninth Circuit has plainly held a declaration stating employment numbers and general information about putative class members' wages is insufficient to justify any particular violation rate. In *Garibay v. Archstone Communities LLC,* 539 Fed.Appx. 764, 764 (9th Cir. 2013), the Ninth Circuit rejected an employer's speculative waiting time and wage statement calculations, finding "a declaration by their supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages," did "not establish[] by a preponderance of the evidence" a basis for such assertions. *Id.*

Accordingly, Defendants have failed to meet their evidentiary burden of showing, by a preponderance of the evidence, that the amount in controversy is more than $5 Million. Thus, the Court should grant Plaintiff's Motion and remand the Action to state court.

**D.    Defendants Fail to Prove that CAFA's Amount in Controversy Requirement Is Satisfied**

Defendants' Opposition, like their removal, simply fails to support their amount in controversy calculations. Rather than responding to the myriad faulty and improper assumptions, that Plaintiff flagged in her Motion, which led to wildly inflated calculations, Defendants waste their time arguing that 100% violation rates have been accepted by other courts and criticizing Plaintiff's limiting allegations.

**1.    Defendants' Assumed Violation Rates Are Unreasonable**

First, as to 100% violation rates, courts in this District repeatedly hold that, where a defendant fails to proffer any "extrinsic evidence independently validating a 100% violation rate," assuming a 100% waiting time violation rate is unreasonable:

> The problem that pervades [Defendant's] estimate for the amount in controversy is that it assumes unreasonably high rates of violations. **For example, [Defendant] posits a 100% violation rate for each putative class member for the waiting time penalties** . . . To be sure, there are circumstances in which a 100% violation rate may be a reasonable proposition for CAFA removal purposes. A defendant may adduce facts that plausibly support such a rate, and the complaint itself may allege facts that make a 100% incident rate a reasonable inference. *See Anderson*

6
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ORDER REMANDING ACTION TO STATE COURT

> [*v. Starbucks* 556 F.Supp.3d 1132, 1138 (N.D. Cal. Dec. 31, 2020) (Donato, J.)] (complaint alleged mandatory practices applied to all employees). None of that is present here. **[Defendant] did not provide any extrinsic evidence independently validating a 100% violation rate**. Its main argument is that the complaint leaves no room for assuming less than 100%, but that is rebutted by the plain language of the allegations. Moore consistently alleges that [Defendant] acted "**at times**" and "**on occasion**" in a manner that violated California state employment laws. No numbers are attached to those qualifiers. Moore also consistently alleges that the violations may have happened to only some of [Defendant's] employees during the class period.

*Moore*, 2021 WL 3033577 at *3 (cleaned up) (emphases added); *see also Duran*, 2021 WL 3281073 at *3 ("[Defendants] main argument is that the complaint leaves no room for assuming less than a 100% violation rate . . . but that is rebutted by the plain language of the allegations. [Plaintiff] consistently alleges 'occasional unlawful conduct' on the part of the defendants, and says that they acted 'at times' in a manner that violated California state employment laws.") Notably, in *Duran* at *3, the court held that where a complaint includes limiting language to describe the rate of violations, such as "at times" or "on occasion," and defendant fails to provide any extrinsic evidence to suggest otherwise, even an assumption of 20%, is unreasonable, unsupported and arbitrary.

Defendants may not rely on statistical assumptions to support their amount in controversy argument. *Armstrong v. Ruan Trans. Co.*, EDCV 16-1143-VAP (SPx), 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25, 2016) (remanding case in which defendant assumed one meal and rest break violation per week for the purposes of calculating amount in controversy). Courts have routinely remanded cases where amount in controversy calculations rely on speculative assumptions unsupported by evidence. *See, e.g.*, *Whitaker v. U.S. Renal Care, Inc.*, No. CV 17-2661-R, 2017 WL 3412203, at *2 (C.D. Cal. Aug. 8, 2017) (remanding case in which defendant assumed one meal and rest break violation per week for the purposes of calculating the amount in controversy); *Freeman v. Mercy Servs. Corp.*, No. 2:16-cv-01151-TLN-KJN, 2017 WL 2572428, at *3-4 (E.D. Cal., June 14, 2017) (remanding case in which defendant assumed one violation per pay period in calculating the amount in controversy for Plaintiff's unpaid meal and rest period claims); *Weston v. Helmerich & Payne Int'l Drilling Co., No*. 1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *6 (C.D. Cal. Sept. 17, 2013) (rejecting amount in controversy calculations where "Defendant provides no factual underpinning for the assumption that a meal and rest break violation occurred one time per week or why an overtime violation should be presumed to occur for four

hours every week"); *Munoz v. Central Parking Sys., Inc.*, No. CV 10-6172, 2010 WL 3432239, at *2 (C.D. Cal. Aug. 20, 2010) (rejecting defendant's assumption of one meal period violation per week because defendant "fail[ed] provide any evidentiary support for th[is] assumption[ ]").

*Salazar v. Johnson & Johnson Consumer Inc.*, No. 2:18-CV-05884-SJO-E, 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018) in on point. As the court in *Salazar* plainly stated with regard to similar limiting allegations at issue here, "Defendant sets forth no facts supporting [an] assumed violation rate of 20% (or even 5%), nor do Plaintiff['s] allegations of 'periodic' violations point to this conclusion." *Id*. The *Salazar* court distinguished other cases that held differently, noting that "these cases are distinguishable because here, Plaintiff limits the allegations in the Complaint— he does not allege regular and consistent violations, but asserts that he and other California Class members were unable to take off duty meal breaks "from time to time," and that they and other California Labor Sub-Class members were "periodically" denied their proper rest periods." *Id*. at *4. Plaintiff's "at times" allegations are the same as those in *Salazar*, therefore cases that hold differently are distinguishable and do not apply here. *Salazar* is clear: Defendants may not assume a 20%, 10%, or even 5% violation rate in light of such limiting allegations. If they do, that "arbitrary assumption does not permit the Court to find that Defendants have established by a preponderance of the evidence the amount in controversy . . . . " *Id*.

Defendants concede that Courts have granted remand in cases where the removing defendant assumed only a 20% violation rate, but nevertheless argues that the problem is solved by simply assuming a smaller violation rate. (Opposition at 14.) Not so. Defendants' Notice still fails, as a speculative 10% violation rate is no more based on the required summary-judgment-type evidence than a baseless 1% violation rate. Accordingly, Defendants' claim that there is some sort of standard accepting that "at times" and "on occasion" language somehow really means 100%, 20%, or 5% depending on Defendants' whim, is directly contrary to the truth. In reality, as discussed in *Salazar* and *Duran*, the true majority view is that with limiting allegations like those at issue here, there is no basis for speculative violation rates without supporting summary-judgment-type evidence. Therefore, there is insufficient evidence—indeed no evidence at all—to support Defendants' purely speculative purported violation rates for the violations at issue.

Second, Defendants' characterization of Plaintiff's limiting allegations is unfair and at odds with decisions in this District. Plaintiff cannot, at this early stage, know the true extent of Defendants' violative conduct. Therefore, it would be dishonest for Plaintiff to plead anything other than the alleged Labor Code violations occurred for "some" employees "at times." Put another way, Plaintiff could never plausibly allege a specific violation rate, because Plaintiff had no way of knowing the alleged violation rates at the time she filed her complaint, which is precisely why she limited her allegations of violation frequency to "at times" and the portion of putative class members affected to "some of them." As courts in this District have stated:

> Overall, [Plaintiff] alleges only that some class members suffered some violations at some time during the class period. That is hardly grounds to infer a 100% violation rate for any of the claims. It is true that [Plaintiff] makes the occasional reference to a "common course of conduct" and "intentionally" adopted wage and hour policies, but those passing comments do not dilute the complaint's overarching allegations of sporadic and intermittent practices.

*Moore*, 2021 WL 3033577 at *2 (cleaned up); *see also Duran*, 2021 WL 3281073 at *3 ("[Plaintiff] alleges that the violations may have happened to only 'some' of the putative class members during the relevant time period.")

### 2. Defendants Concede Their Calculations Are Based on Incorrect Assumptions

More to the point, Defendants failed to respond to, and therefore concede, the specific arguments Plaintiff made undermining their amount in controversy calculations.

First, Defendants make no mention of their overtime amount in controversy calculations in the Opposition. Therefore, Defendants concede Plaintiff's argument that their calculation relied on speculative and unsupported assumptions and should be either discarded entirely or discounted.

Second, as detailed in Plaintiff's Motion, Defendants improperly assume every single Class Member is aggrieved for every one of their calculations. Specifically, with respect to Plaintiff's overtime, minimum wage, meal period, and rest period, claims, Defendants assumed that all **6,190** potential Class Members suffered a violation once every week. (*See* Removal, ¶¶ 40, 43, 47.) With respect to Plaintiff's waiting time claim, Defendants assumed that all **3,856** former employees suffered waiting time violations. (*Id.*, ¶ 51.) Finally, with respect to Plaintiff's paystub claim,

Defendants assumed that all **2,100** potential Class Members that Defendants employed at a given time experienced violations. (*Id.*, ¶ 54.) These assumptions alone could have inflated Defendants' calculations by over 100 times the true value. Simply put, Defendants cannot assume that 100% of putative class members suffered these violations, particularly without providing any evidentiary support. *See Garibay*, 539 Fed. App'x. at 764.

Knowing that their calculations are based on this untenable assumption, Defendants misrepresent Plaintiff's allegations. Specifically, with respect to Plaintiff's waiting time and wage statement allegations, Defendants attempt to stretch them to seem as if Plaintiff alleged 100% violations. But a cursory review of the allegations shows that's not the case. (*See* Complaint ¶ 69 ("Defendants, due to the failure, **at times**, to provide overtime wages mentioned above, failed to pay Plaintiff and Class Members all wages earned prior to resignation or termination . . ."); *Id.* ¶ 77 ("Defendants failed . . . **at times**, to furnish Plaintiff and Class Members with accurate itemized statements . . .") (emphases added).) In other words, Plaintiff's waiting time violation is based solely on a derivative violation that occurred "at times," and Plaintiff explicitly alleges that wage statement violations only occurred "at times."

The Ninth Circuit has ruled that it is unreasonable to assume from an allegation of an employer's "pattern and practice" of violating the California Labor Code that a violation occurred in each and every shift. *Ibarra v. Manheim Investments, Inc.,* 775 F.3d 1193, 1198-99 (9th Cir. 2015) ["*Ibarra*"]. As such, it is certainly unreasonable to determine a 100% violation rate when, as here, Plaintiff alleges only that overtime wages were *at times* underpaid to Class Members. This is particularly true as Plaintiff does not base his claim of waiting time penalties on a laundry list of other potential violations as Defendants argue. Rather, Plaintiff's allegations for waiting time penalties are, as pleaded, tethered to her claim that Defendants did not pay Plaintiff and Class Members for all overtime hours worked. Further, Defendants' calculation of a 100% violation rate for non-compliant wage statements is not tethered to <u>any</u> language in the Complaint, which only alleges that Defendants' failure to provide accurate wage statements was "occasional." (Complaint, ¶¶ 77-78.) Nor did Defendants, after the assumption was factually challenged, produce summary

judgment-type proof, *or any support for that matter*, of their bare-naked assertion that plainly conflicts with the allegation itself.

Critically, this Court has held (in a decision that Defendants did not even attempt to distinguish) that making this exact assumption, particularly in light of Plaintiff's limiting "at times" allegations, is improper. In *Naranjo*, this Court held that GNC failed to plausibly demonstrate CAFA's amount-in-controversy requirement was satisfied. *Naranjo v. General Nutrition Corp.*, 2012 WL 2119260, at *4-5. There, like Defendants here, "GNC assume[d] that every member of the class experienced a violation for every claim." *Id.* at *3 (noting that GNC's calculations were "based on unsupported assumptions.") Notably, the plaintiff in *Naranjo* used language much stronger than "at times," by alleging violations occurred "routinely." *Id.* at *4. Even in light of this language, the Court held that GNC's "calculations [were] not sufficient." *Id.*

Third, and relatedly, the manner in which Defendants calculate "6,190" potential Class Members severely inflates their amount-in-controversy calculations. Mr. Gaitan asserts that Defendants currently employ 2,334 non-exempt workers. (Gaitan Decl. ¶ 6a.) Mr. Gaitan also asserts that, during the time period of August 2, 2019 to October 10, 2023, there were 3,856 employees whose employment ended. (*Id.*) Based on these two numbers, Mr. Gaitan concludes that Defendants employed 6,190 non-exempt workers during the entire Class Period. (*Id.*) Solely for the purpose of illustrating the fallacy in Defendants' calculations, Plaintiff assumes these numbers are correct.

The problem with assuming that all 6,190 non-exempt workers experienced weekly violations for four (4) years, is that Defendants are counting **hundreds of thousands** of violations that never occurred. Specifically, most of the 3,856 former employees have not worked for Gruma since 2019, 2020, 2021, or 2022, respectively. But Defendants assume that every one of the 3,856 former employees continued to, on a weekly basis, experience violations during the entire August 2, 2019 through October 10, 2023 time period. To illustrate the multiplicative effect this had on Defendants' calculations, consider just one theoretical employee whose employment was terminated on September 5, 2021, the median date in Defendants' proposed time range. Based on this employee alone, Defendants calculated 109 weeks-worth of non-existent violations. That number, multiplied

by the thousands of former employees who were terminated well before October 10, 2023 (some in August of 2019), means that Defendants calculated hundreds of thousands of non-existent violations. Critically, Defendants uses these hundreds of thousands of non-existent violations as a bedrock for every one of their calculations. (*See* Removal, ¶¶ 41, 44, 48.)

Fourth, for every one of their calculations, Defendants utilized the wrong statute of limitations, thereby improperly adding an entire year of "data" to each. Plaintiff's claims have a three-year statute of limitations period. *See* California Code of Civil Procedure § 338 (stating that plaintiffs have three years to commence "[a]n action upon a liability created by statute.") Rather than calculating three years-worth of violations (August 2, 2020 to October 10, 2023) Defendants inexplicably calculated four years of violations. (*See, e.g.*, Removal, ¶ 50 ("During the period of **August 2, 2019** to October 10, 2023") (emphasis added).) This could have inflated every one of Defendants' (already severely inflated) calculations by, at a minimum, an additional 25% each.

Fifth, in support of their minimum wage, meal period, and rest period calculations, Defendants assume, without any evidentiary support whatsoever, wildly arbitrary violation rates. (*See* Removal, ¶ 41 (overtime: "one hour of overtime for each week"), *Id.* ¶ 44 (minimum wage: "15 minutes per shift"); *Id.* ¶ 47 ("all meal periods and rest breaks"). But, as this Court has properly noted, "courts in this circuit have expressly rejected the practice of using general allegations in a complaint as the basis for establishing the amount in controversy." *Naranjo*, 2012 WL 2119260, at *4. This is particularly true in light of Plaintiff's limiting "at times" allegations. *See id.* ("Moreover, the complaint only alleges that the putative class members worked overtime 'during certain workweeks.'") Simply put, it is unreasonable to assume that (1) every single employee worked one hour of unpaid overtime a week, (2) every single employee had 15 minutes of unpaid work per shift, and (3) every single meal and rest period, for the last four years, violated California labor laws.

Sixth, Defendants calculated attorneys' fees at 25% of a severely inflated $31,833,959. On its face, assuming a 25% recovery for attorneys' fees seems modest. But, again, even the revised $31,833,959 million figure is wildly exaggerated for the myriad reasons stated fully *supra*. Therefore, the Court should not consider Defendants' attorneys' fee calculation. *See Duran v. Allegis Glob. Sol.'s, Inc.*, 2021 WL 3281073, at *4 (N.D. Cal. Aug. 2, 2021) ("But [Defendant]

applies the 25% to valuations of the claims that are inherently unreasonable, and so the amount attributed to fees cannot be used toward the jurisdictional threshold.")

In deciding a motion to remand, the Ninth Circuit has held that a court may not replace a defendant's unreasonable assumptions with its own reasonable assumptions. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020), *See id.* at 701 ("The district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own.") Rather, "[a]fter considering any evidence put forth by the parties, and assessing the reasonableness of the defendant's assumptions, the court then decides where the preponderance lies." *Id*. (internal citations omitted). "When applying the preponderance of the evidence standard to California Labor Code claims, many California district courts have refused to credit damage calculations based on variables not clearly suggested by the complaint or supported by evidence, concluding that the calculations are mere conjecture." *Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1127 (C.D. Cal. 2010). So too, here, Defendants have failed to meet their evidentiary burden to show, by a preponderance of the evidence, that the amount in controversy is more than the $5 million required to satisfy CAFA jurisdictional requirements. Thus, as it has before, the Court should remand this action to state court. *See Naranjo*, 2012 WL 2119260, at *5.

### E. Defendants Concede that the Court Lacks Equitable Jurisdiction

Defendants fail to dispute, and therefore concede, that the Court has no equitable jurisdiction over Plaintiff's UCL claim. *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022) ("Even when a court has subject matter jurisdiction, '[t]here remains the question of equitable jurisdiction' before 'the District Court properly [can] reach the merits.'") (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 754 (1975)); *see also Guthrie v. Transamerica Life Ins. Co.*, 561 F.Supp.3d 869, 879 (N.D. Cal. 2021) (holding that CAFA's expansion of federal subject matter jurisdiction over certain class actions "did not purport to alter traditional equitable rules.")

Conceding that the Court lacks equitable jurisdiction, Defendants claim (again, without citing to a single binding or persuasive legal authority) that "this is a basis for the dismissal of [Plaintiff's] UCL claim" but *not* grounds for remand. (Opposition at 21.) Notably, Defendants do not even attempt to distinguish the multiple Supreme Court decisions Plaintiff cites to show that a

13
PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ORDER REMANDING ACTION TO STATE COURT

federal court has discretion to *either* dismiss or remand to state court any action over which it lacks equitable jurisdiction. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996); *Twist v. Prairie Oil & Gas Co.*, 274 U.S. 684, 690 (1927); *Cates v. Allen*, 149 U.S. 451, 460-61 (1893).

Defendants cannot argue that the California Legislature intended to provide the law as a right for its citizens regardless of whether an adequate remedy exists at law. *See* Cal. Bus. & Prof. Code § 17205; *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 174-78 (2000). Under long-standing rules, there is simply no basis to effectively eviscerate Plaintiff's state-law rights under the UCL here just because Defendants have asserted CAFA jurisdiction. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945) ("Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by State law[.]"). The Court should grant remand on the basis of Plaintiff's UCL claim.

### III. CONCLUSION

The amount-in-controversy requirement under CAFA *must* be met for this Court to exercise jurisdiction over this Action. Defendants bear the burden, by a preponderance of the evidence, of showing there is more than $5 Million in controversy; Defendants have failed to meet their burden. Thus, this Action should be remanded to the State Court in which it was filed because Defendants' removal of this action was improper.

Dated: December 4, 2023     BIBIYAN LAW GROUP, P.C.

By: *Zachary T. Chrzan*
    DAVID D. BIBIYAN
    JEFFREY D. KLEIN
    ZACHARY T. CHRZAN
Attorneys for Plaintiff YESICA BECERRA ZAMORA, an individual and on behalf of all others similarly situated